IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY HETH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 C 1096 |
| v. ) | |
| ) | Judge John Z. Lee |
| LASALLE COUNTY, THOMAS J. ) | |
| TEMPLETON, LaSalle County Sheriff, ) | |
| CORRECT CARE SOLUTIONS, LLC, ) | |
| SHELLEY KESSLER, KERRY VAN ) | |
| RUDEN, YPOLITO SALINAS, JARED ) | |
| DUNNING, MICHAEL LYNCH, ) | |
| CHARLES WEYGAND, and SGT. ) | |
| RATLIFF, LaSalle County Sheriff's ) | |
| Officers, and Dr. ADEYEMI FATOKI, ) | |
| DR. ROZEL ELAZAGUI, DR. OKULEYE ) | |
| C. CLAPP R.N., Correct Care Solutions ) | |
| medical staff. ) | |
| ) | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeffrey Heth filed this lawsuit against LaSalle County, the LaSalle County Sheriff, a LaSalle County sergeant, various LaSalle County officers, Correct Care Solutions, LLC ("Correct Care"), and various nurses and doctors employed by Correct Care, alleging claims relating to Heth's stay in LaSalle County Jail in 2018. The LaSalle County Defendants and Correct Care have each filed motions to dismiss Heth's claims [27][34]. For the reasons stated herein, these motions are granted in part and denied in part.

## Background

### A. Factual Background[1]

On May 25, 2018, Heth was charged with delivery or possession with intent to deliver narcotics and was taken into custody at LaSalle County Jail. Second Amended Complaint ("SAC") ¶ 9. During his intake, Heth spoke or was in contact with Defendants Shelley Kessler, Kerry Van Ruden, Ypolito Salinas, Jared Dunning, Michael Lynch, and Charles Weygand ("Officer Defendants"), all of whom, it is alleged, were or should have been aware both that Heth suffers from necrotizing fasciitis, a skin condition that has left him with open sores and nerve damage, and that Heth must take the drug Gabapentin to manage the pain associated with this condition. *Id.* ¶ 10, 13.

Following intake, Heth, with the approval of Defendant Sergeant Ratliff and Nurses C. Clapp and/or Jennifer Leonard, was admitted to the Jail's medical unit. *Id.* ¶ 15, 16. In the medical unit, Heth was placed under medical observation for heroin withdrawal in addition to the care he required for his skin condition. *Id.* ¶ 15. There, Heth informed Nurses C. Clapp and Jennifer Leonard, and/or Doctors Okeleye, Adeyemi Fatoki, and Rozel Elazagui ("Medical Defendants")—each an employee of Correct Care—of the medication he was taking, including Gabapentin. *Id.* ¶ 17. Despite Heth's regular visits to the medical unit and repeated requests for Gabapentin, and despite the severe adverse effects that withdrawal from Gabapentin

---

[1] The following facts are taken from Heth's second amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

can cause, Heth was not given this medicine, *id.* ¶ 12, 19.

Heth's condition deteriorated and by May 30, 2018, he was acting extremely paranoid and anxious, hallucinating, and making unusual comments. *Id.* ¶ 20. Nonetheless, Heth was removed from medical observation on or around June 1, 2018. *Id.* ¶ 21. From then, the Officer Defendants assumed primary responsibility to observe Heth, and Heth's condition continued to worsen; he became extremely ill in his cell, was unable to walk, eat, or clean up after himself, and threw up all over his cell. *Id.* ¶¶ 22–24. Yet, though the Officer Defendants were able to observe Heth's rapidly declining health, they did not promptly take him to the medical staff, resulting in Heth's needless pain and suffering. *Id.* ¶¶ 24–26.

By the morning of June 2, Heth was disoriented and tearing at his bandages, exposing himself to infection; was unable to communicate verbally; was speaking gibberish; and was unable to walk on his own. *Id.* ¶¶ 27–28. Some time on June 2, the Medical Defendants were made aware of Heth's declining condition, but instead of ensuring he receive immediate medical attention, they had the Officer Defendants search Heth's cell for drugs, finding none. *Id.* ¶¶ 29–30.

At or around 3:30pm on June 2, 2018, Heth was found unconscious in his cell. *Id.* ¶ 32. He was taken to the emergency room at OSF St. Francis Hospital and then transferred to OSF St. Elizabeth, where he was placed on life support for respiratory failure, *id.* ¶¶ 33–34. He remained on life support until June 6 and remained in the hospital until June 12. *Id.* ¶¶ 35, 37.

3

**B.     Procedural Background**

Heth's second amended complaint contains a § 1983 deliberate indifference claim against the Medical Defendants (Count I); a § 1983 deliberate indifference claim against the Officer Defendants (Count II); a *Monell* claim against LaSalle County, LaSalle County Sheriff Thomas Templeton, and Correct Care (Count III); a *respondeat superior* claim against Correct Care (Count IV); an Americans with Disabilities Act ("ADA") claim against LaSalle County and Sheriff Templeton (Count V); a Rehabilitation Act claim against LaSalle County and Sheriff Templeton (Count VI); an indemnification claim against Lasalle County (Count VII); and a state-law "Negligence/Willful and Wanton Conduct" claim against LaSalle County and Sheriff Templeton (Count VIII).

In his briefs responding to the instant motions to dismiss, Heth has made certain clarifications and concessions. First, Heth states that his *Monell* claim (Count III) is "targeted only toward [Correct Care], and thus . . . Plaintiff has no objection to granting a motion to dismiss the *Monell* claim only against the LaSalle Defendants and the Defendant Officers." Resp. to LaSalle Defs.' Mot. to Dismiss at 8 n.3, ECF No. 31. Moreover, "[u]pon further reflection," Heth "has no objection to the granting of the motion to dismiss as to the state law claims [(Count VIII)] against the LaSalle Defendants." *Id*. at 10 n.4. Heth also acknowledges that, under binding precedent, § 1983 claims may not be premised on a *respondeat superior* theory, and relatedly adds that his *respondeat superior* claim (Count IV) was made merely "to preserve the issue for appellate review." Resp. to Correct Care's Mot. to Dismiss at 7 n.3, ECF No.

4

45. Accordingly, the Court dismisses these claims, or portions of claims, with prejudice.

The Court now proceeds to assess the remaining challenges contained in the instant motions to dismiss.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this way, the complaint must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Count II: Section 1983 deliberate indifference claim against the Officer Defendants

The LaSalle Defendants offer two arguments as to why Heth's deliberate indifference claim against the Officers Defendants should be dismissed at this stage of the proceedings. First, they argue that Heth has engaged in an "extreme degree of group pleading" that does not place "each defendant 'on notice of what exactly [he or she] might have done to violate [the plaintiff's] rights under the Constitution.'" LaSalle Defs.' Reply in Support of Mot. to Dismiss at 3, ECF No. 36 (quoting *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)).

The Court disagrees. Admittedly, Heth's complaint refers collectively to the actions and inactions of the "Defendant Officers" and also at various points strings the Officers' names together without specifically differentiating between them, *see, e.g.*, SAC ¶ 51 ("Officers Shelley Kessler, Kerry Van Ruden, Ypolito Salinas, Jared Dunning, Michael Lynch, [and] Charles Weygand, knew the Plaintiff was in urgent need of medical treatment but acted with deliberate indifference in failing to provide such treatment and/or failing to ensure such treatment was provided"). Nevertheless, Heth's complaint provides a straightforward account of how each Officer was deliberately indifferent to his medical needs, *i.e.*, that each Officer was aware following Heth's removal from medical observation that Heth's health was drastically declining and yet delayed in getting him treatment. This is enough to put each of the Defendant Officers "on notice of what exactly [he or she] might have done to violate [Heth's] rights under the Constitution." *Ross*, 578 F.3d at 582; *see, e.g., Springs v.*

6

*Schwartz*, No. 15 C 5437, 2017 WL 4130504, at *5 (N.D. Ill. Sept. 19, 2017) (concluding that the allegations in a complaint that "each individual Defendant knew of and disregarded the risks associated with [plaintiff's] serious medical condition and failed to ensure that he received prompt and adequate medical care" and that "[t]he acts and omissions of each individual Defendant caused [Plaintiff] damages in that he suffered ongoing and extreme physical and mental pain while he was in Defendants' custody" were, in conjunction with the rest of the complaint, adequate to inform individual defendants of the wrongful conduct alleged against them); *Kuri v. City of Chicago*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) ("Although it relies on 'group pleading,' [the plaintiff's] complaint is coherent, and the basis of his claims is easily understood.").

The LaSalle Defendants also contend that Heth's deliberate-indifference claim against the Officer Defendants must be dismissed because the complaint "fails to demonstrate any specific communication to or knowledge by any of the specific individual officers sufficient to alert him or her to an excessive risk to [Heth]'s health or safety." LaSalle Defs.' Mot. to Dismiss at 6, ECF No. 27. This too is unpersuasive. Specifically, Heth alleges that, once he was removed from medical observation, his health began to rapidly deteriorate—as manifested in, *inter alia*, Heth being unable to walk or eat, throwing up all over his cell, and tearing off his bandages—and that the Officer Defendants "*observed* all these changes in [Heth] as he continued to worsen, but no steps were taken to alleviate his pain and suffering or to get [Heth] the prompt medical attention that he needed." SAC ¶ 26 (emphasis added). And

7

while the LaSalle Defendants argue that Heth "does not claim that he was not taken to medical, just that it was not fast enough," LaSalle Defs.' Mot. to Dismiss at 6, delayed treatment can in fact be the basis of a § 1983 deliberate-indifference claim. *See, e.g.*, *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) (upholding a § 1983 deliberate-indifference claim where plaintiff alleged that his medical treatment in prison was "unnecessarily and deliberately withheld" for two days); *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (recognizing that "delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims.").

## II. Count III: *Monell* claim against Correct Care

Correct Care argues that Count III fails to state a proper *Monell* claim against it. "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Accordingly, to state a *Monell* claim, a plaintiff is required to "'plead[] factual content that allows the court to draw the reasonable inference' that the [defendant] maintained a policy, custom, or practice" that deprived him of his constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (first alteration in original).

Here, Heth has failed to state a viable *Monell* claim. Heth's second amended complaint conclusorily and vaguely alleges the existence of "practice[s] and/or polic[ies]" that relate to the alleged conduct of the relevant nurses and doctors in this

8

case, but fails to describe those practices or policies with particularity or support their existence with anything but conclusory statements. *See* SAC ¶ 56 (stating, in the entirety of its description of Correct Care's alleged policies, practices, or customs, that Correct Care has "a practice and/or policy of refusing to provide injured inmates with appropriate and necessary medications to manage[] his medical conditions, a practice and/or policy of refusing to provide inmates with appropriate care for said conditions, and a practice and/or policy of limiting medical care to inmates in order to make a greater profit.").

These vague, conclusory allegations against Correct Care lack the "factual content to 'nudg[e]' [Heth's] claim . . . 'across the line from conceivable to plausible.'" *McCauley*, 671 F.3d at 618 (first alteration in original) (quoting *Iqbal*, 556 U.S. at 683); *see Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) ("[B]oilerplate allegations of a municipal [or corporate] policy, entirely lacking in any factual support that a . . . policy does exist, are insufficient [to state a viable *Monell* claim]."); *Frye v. Wexford Health Sources, Inc.*, No. 4:16 C 04187, 2017 WL4157522, at *3 (C.D. Ill. Sept. 19, 2017) (rejecting plaintiff's allegation that "Defendant . . . had at the time of the occurrence one or more policies of denying medical care to inmates such as Plaintiff, knowing there was a high likelihood these policies would ultimately lead to injuries such as occurred to Plaintiff," because this allegation was "elements of the cause of action dressed up as facts"); *Gallagher v. O'Connor*, 664 F. App'x 565, 569 (7th Cir. 2016) (concluding that plaintiff failed to adequately allege the existence of a custom for *Monell* purposes where the complaint

9

"merely describe[d] the factual circumstances of [the] arrest [at issue in the case] and tack[ed] on boilerplate allegations that trace the legal requirements of a *Monell* claim.").

For this reason, permitting Heth's *Monell* claim to survive beyond the pleading stage "would be tantamount to allowing suit to be filed on a *respondeat superior* basis." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). That is, a plaintiff would be allowed to file claims whenever they are mistreated by prison medical staff, "add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the 'claims' made." *Id.* For these reasons, the *Monell* claim is dismissed.

### III. Counts V and VI: ADA and Rehabilitation Act claims against LaSalle County and Sheriff Templeton

Next, the LaSalle Defendants argue that Heth fails to state a valid claim under either the ADA (Count V) or the Rehabilitation Act (Count VII). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The Rehabilitation Act, which is "materially identical," *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996), provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). *See also Lacy v. Cook County, Ill.*, 897 F.3d 847, 852 n.1 (7th Cir.

10

2018) ("Because Title II [of the ADA] was modeled after section 504 [of the Rehabilitation Act], 'the elements of claims under the two provisions are nearly identical.'" (quoting *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 845 n.6 (7th Cir. 1999))).

Heth's second amended complaint alleges that, "[b]y failing to provide [Heth] with the medication he required to manage his pain," LaSalle County and Sheriff Templeton "discriminated against [Heth] in violation of the [ADA]." SAC ¶ 66. Similarly, he alleges that "[b]y failing to provide [Heth] with his prescribed medications," Lasalle County and Sheriff Templeton "discriminated against [Heth] in violation of Section 504 [of the Rehabilitation Act]." *Id.* ¶ 74.

Even assuming that Heth has adequately pleaded that his skin condition renders him disabled within the meaning of the ADA and the Rehabilitation Act, his complaint is still otherwise lacking. Heth's theory as to these claims appears to be that, by failing to provide him with his prescribed medicine, LaSalle County failed to reasonably accommodate him with respect to certain services, programs, or activities. *See* SAC ¶ 64 ("The ADA requires public entities to provide reasonable accommodations to qualified individuals with disabilities to enable them *to benefit from the service and participate in the program or activity*." (emphasis added)); *id.* ¶ 71 ("Section 504 [of the Rehabilitation Act] requires covered entities to provide reasonable accommodations to enable qualified individuals with disabilities *to participate in the program or activity*." (emphasis added)). Yet, Heth does not identify these services, programs, or activities, or otherwise discuss them. *See, e.g.*, *Hartz v.*

11

*Lain*, No. 2:13 C 9, 2013 WL 5934608, at *4 (N.D. Ind. Nov. 5, 2013) (dismissing an ADA claim partly because it did not "identify . . . what services, programs, or activities [plaintiff] was alleged[ly] denied, but others received."); *cf. Bryant*, 84 F.3d at 249 (stating that incarceration itself is not a "program" or "activity").

Moreover, to the extent that Heth's argument is that the service, program, or activity for which he did not receive an adequate accommodation was the specific service of receiving proper treatment for his skin condition, Heth cannot show that he was "otherwise qualified" for that service *but for* his disability, thus dooming his claim. *See Brumfield v. City of Chicago*, 735 F.3d 619, 632 (7th Cir. 2013) (describing the "otherwise qualified" criterion for failure-to-accommodate claims under the ADA and the Rehabilitation Act); *Grzan v. Charter Hosp. of NW Ind.*, 104 F.3d 116, 121 (7th Cir. 1997) ("Grzan is not 'otherwise qualified' [for psychiatric treatment] because, absent her [psychiatric disability], she would not have been eligible for treatment in the first place."), *abrogated on other grounds as stated in Amundson v. Wisc. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013); *Fitzgerald v. Corr. Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("Fitzgerald would not have been 'otherwise qualified' for such [medical] treatment in the absence of his alleged disability—his alleged disability in this case was the reason why Fitzgerald was seeking medical treatment.").

## IV. Count VII: Indemnification claim against LaSalle County

Finally, the Court rejects the LaSalle Defendants' argument that Heth's indemnification claim must be dismissed. That argument is premised on the

12

incorrect assumption that the Court would dismiss Count II of the second amended complaint—the § 1983 deliberate indifference claim against the Officer Defendants—thus leaving "nothing nor anyone for the County to indemni[f]y," LaSalle Defs.' Mot. to Dismiss at 15. As explained *supra*, the Court has not dismissed Count II, and it thus will not dismiss Count VII at this stage of the proceedings.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted as to Counts III, IV, V, VI, and VIII of the second amended complaint. These claims are dismissed with prejudice; for some of these claims, Heth has withdrawn them or acknowledged that they lack merit (Count III as to the Officer Defendants, Count IV, and Count VIII), and for the rest of these claims, Heth was earlier made aware of their factual deficiencies through the LaSalle Defendants' original motion to dismiss, which preceded and led to Heth filing a second amended complaint. *See* Pl.'s Mot. to Amend the Compl. at 2, ECF No. 22 ("Rather than address [the LaSalle Defendants' motion to dismiss,] the Plaintiff moves to amend the complaint to address the . . . Defendants' concerns."). The instant motions to dismiss are denied, however, as to Count II and Count VII of the second amended complaint.[2]

**IT IS SO ORDERED.**  ENTERED: 11/26/19

*John Z. Lee*

**John Z. Lee**
**United States District Judge**

---

[2] Count I—a § 1983 deliberate indifference claim against the Medical Defendants—was not challenged in the instant motions to dismiss.

13